## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ADAM EVANS, | ) | Case No. 1:19-cv-2870 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| ANNETTE CHAMBERS-SMITH, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

In the pending motion for summary judgment (ECF No. 28), Defendants raise the issue of administrative exhaustion, and the Court ordered the parties to brief only that threshold issue, holding in abeyance the balance of Defendants' motion.  (ECF No. 29.)   For the reasons below, the Court **DENIES** Defendants' motion as to exhaustion only and **ORDERS** the parties to complete summary-judgment briefing on the remaining issues on the schedule set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Adam Evans arrived at Lorain Correctional Institute on April 4, 2019. (ECF No. 36, PageID #651.)  On April 22, 2019, Mr. Evans needed to take a shower. (ECF No. 35, PageID #643.)   When he did so, Plaintiff maintains two corrections officers gave him a bar of "state soap" that was full of staples.  (ECF No. 36, PageID #652.)  Unaware of the staples, Mr. Evans proceeded to wash himself with the soap, resulting in alleged injuries and damages.  (*See* ECF No. 28-1, PageID #469–73.)  This lawsuit stems from that incident.  The discrete issue before the Court, however, is

whether Mr. Evans exhausted his administrative remedies while incarcerated and, if not, whether he can demonstrate that one of three exemptions from that requirement applies.  (*See* ECF No. 29.)

### A.    The Grievance Procedure

At Lorain Correctional, there is an electronic grievance procedure that, when functioning properly, consists of three steps.  (ECF No. 38-1, PageID #723–24.)  First, an inmate files an "Informal Complaint Resolution" through the JPay system that goes to the appropriate supervisor in the inspector's office.  (*Id.*, PageID #723; ECF No. 38-1, ¶ 4, PageID #700.)  Then, the appropriate supervisor has seven days to respond, and the inmate receives notification of that response through the electronic system.  (ECF No. 38-1, PageID #723.)  If there is no response, the inmate must raise that issue immediately, and the supervisor has an additional four days to respond; conversely, if the inmate believes the response "violate[s] policy," is "incorrect," or is insufficient, he may proceed to the second step of the process.  (*Id.*)

Second, the inmate may file a notice of grievance, but must do so within fourteen days "from the date he has received the answer to the informal complaint . . . unless the Inspector waives the time limit."  (*Id.*, PageID #724.)  After filing of the notice, the inspector's office has fourteen days to respond, but may take an additional fourteen days if the prisoner is notified.  (*Id.*)  If the inspector cannot resolve the issue, he may request an additional fourteen days.  (*Id.*)  Essentially, once an inmate submits a notification of grievance at step two, prison officials have *up to* forty-two days to respond, so long as the inspector properly notifies the inmate or requests additional time.  (*See id.*)

2

Third, if the matter remains unresolved, an inmate may appeal to the Chief Inspector.  (*Id.*)  He must do so within fourteen days of the response to the notice of grievance.  (*Id.*)  An appeal has one of four outcomes:  the resolution of a grievance can be (1) affirmed, (2) modified, (3) reversed, or (4) result in a request for more information.  (*Id.*)  A response from the Chief Inspector takes "about thirty days," and the decision from this third step is final.  (*Id.*)

### B.  Facts Related to Exhaustion

In an affidavit, Mr. Evans claims that on April 22, 2019, shortly after the soap incident, he was denied the opportunity to file a grievance because he was put on JPay restrictions and "could not get on jpay to follow the inmate grievance procedure." (ECF No. 36, ¶ 7, PageID #652; *see also id.*, ¶¶ 4 & 5.)  On April 25, 2019, Mr. Evans was barred from using the JPay system and from getting food from the commissary until May 9, 2019, as punishment for an unrelated incident.  (*Id.*, ¶ 7; ECF No. 38-1, PageID #760.)  Mr. Evans maintains that from May 9, 2019 until June 12, 2019, guards prevented him from accessing JPay to file his step two notice of grievance. (ECF No. 36, ¶ 8, PageID #652.)  By the time he was allowed back on the system, Mr. Evans asserts that his time to file his appeal had passed.  (*Id.*)  He maintains he made diligent efforts to "effectively complete" the necessary steps of his grievance, but was denied access to JPay, despite numerous requests to use the system.  (*Id.*, PageID #653.)

For their part, Defendants submitted Mr. Evans's grievance history.  (ECF No. 32-1.)  It shows that Mr. Evans filed an informal complaint on April 25, 2019; grievances against the Warden and Inspector on May 25, 2019 and May 30, 2019;

3

another grievance against the Warden on June 12, 2019; appeals on May 27 and 28, 2020; another informal complaint on May 31, 2020; an appeal on June 9, 2020; and an informal complaint on June 15, 2020.  (*Id.*, PageID #576–77.)

Defendants also submitted Mr. Evans's step one complaint related to the soap incident, which he filed on April 25, 2019.  (*Id.*, PageID #578.)  That grievance indicates that, on May 6, 2019, at 8:49:30 am, the institutional investigator began looking into the claim, and thirteen seconds later, closed the complaint.  (*Id.*)  Defendants also provided several other grievances Mr. Evans filed, two of which occurred around the time of the soap incident:  one complaint against the Warden, filed on May 25, 2019 and denied six days later (*id.*, PageID #579), and another against the Inspector, filed on May 30, 2019 and denied the next day (*id.*, PageID #580).

### C.    Procedural History

While still incarcerated, on December 11, 2019, Mr. Evans filed this *pro se* complaint against the Governor of Ohio, the Warden, and several others, including various prison officials.  (ECF No. 1, PageID #1.)  He specifically named Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction; Ohio Governor Michael DeWine; Andrew Eddy, Medical Director of the Ohio Department of Rehabilitation and Correction; Kimberly Clipper, Warden of Lorain Correctional; and Officer Smith and Officer Corbett.  (*Id.*, PageID #5–7.)  Plaintiff asserts six causes of action based on the bar of soap incident:  assault mutilation by guards, inhumane abusive conditions, statewide corruption, unsafe unsanitary housing environments, ineffective grievance procedure, and falsified inspections.

4

(*Id.*, PageID #10–52.)   On April 8, 2020, the Court granted Plaintiff's motion to proceed *in forma pauperis* and allowed his action to proceed against Officers Corbett and Smith.  (ECF No. 8, PageID #349.)  At the same time, the Court dismissed Plaintiff's claims against the other Defendants.  (*Id.*)

Following that Order, only the assault and mutilation claim remains.  (*Id.*)  Defendant Officers Corbett and Smith answered the complaint (ECF No. 12) and moved for judgment on the pleadings (ECF No. 13).  The Court granted the motion as it pertained to the claims against Defendants in their official capacities, but denied the motion as to the claims against them individually.  (ECF No. 21, PageID #411.)  After the case management conference and several extensions, Plaintiff moved to compel discovery, requesting access to video footage of the incident, a protective order, and an evidentiary hearing.  (ECF No. 27, PageID #436–38.)  Defendants moved for summary judgment, arguing among other things that Plaintiff failed to exhaust his administrative remedies, barring his claim.  (ECF No. 28, PageID #442.)

On December 15, 2020, the Court ordered Plaintiff to respond to the motion for summary judgment by January 4, 2021, but to limit his response to the threshold exhaustion issue.  (ECF No. 29, PageID #561.)  Plaintiff filed a wide-ranging response on January 6, 2021 (ECF No. 33), which the Court struck because it did not comply with the previous order (Jan. 7, 2021 Dkt. Entry).  Plaintiff then filed a conforming brief (ECF No. 35), to which Defendants replied, attaching additional evidence not previously submitted (*see* ECF No. 38).

## ANALYSIS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the non-moving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*,

488 F. Supp. 3d at 576 (citing *Celotex Corp.*, 477 U.S. at 322).  Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate.  *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Anderson*, 477 U.S. at 250).  If "the evidence is merely colorable or is not significantly probative," however, summary judgment for the movant is proper.  *Id.*  The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

## I. Exhaustion

Under the Prison Litigation Reform Act, a prisoner "may not bring a federal action related to prison conditions 'until such administrative procedures as are available are exhausted.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting 42 U.S.C. § 1997e(a)).  Complete exhaustion is a mandatory requirement, meaning failure to exhaust cannot be excused, even under special circumstances. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and *Jones v. Bock*, 549 U.S. 199, 211 (2007)).

Failure to exhaust is an affirmative defense, meaning "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  "Instead, failure to exhaust 'must be established by the defendants.'" *Surles*, 678 F.3d at 455 (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011)).  Because Defendants bear the burden at trial, they "bear an initial summary judgment burden that is higher in that they must show the record contains evidence satisfying their burden of persuasion and that no reasonable jury would be free to disbelieve it." *Does 8–10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (cleaned up). Faced with an exhaustion argument, a "district court should grant summary judgment *only if* a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Id.* (emphasis added) (citation omitted).

## I.A.   Available Remedies

Defendants argue that the exhaustion issue is simple because Plaintiff did not exhaust his remedies, cannot overcome the requirement that he do so, and does not qualify for an exception.  (ECF No. 38, PageID #686.)  Plaintiff responds that the administrative remedies Defendants say he failed to exhaust were not available to him, so he was not required to exhaust before bringing this action.  (ECF No. 35, PageID #644, 646, 648.)

The Prison Litigation Reform Act contains a "built-in exception to the exhaustion requirement:  A prisoner need not exhaust remedies that are not 'available.'" *Ross*, 136 S. Ct. at 1855 (quoting 42 U.S.C. § 1997e(a)).  Whether a grievance procedure is available is assessed based on the "ordinary meaning" of that word. *Ross*, 136 S. Ct. at 1858–59 (quotations omitted) (citing *Booth v. Churner*, 532

U.S. 731, 738 (2001)).  Put differently, a prisoner must "exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Id.* at 1859 (cleaned up).

The Supreme Court has recognized three circumstances in which a grievance procedure necessary for exhaustion is not "available":  (1) where the procedure operates as a dead end, (2) where the procedure is so opaque it is practically incapable of use; or (3) where prison officials prevent prisoners from accessing the grievance procedure.  *Id.* at 1859–60.  Demonstrating any one of these exceptions defeats an exhaustion defense.  *Id.* at 1859.

### I.B.    Opacity and Accessibility

Plaintiff invokes the second and third exceptions.  With respect to opacity, Plaintiff argues that an ordinary prisoner is incapable of understanding or using the grievance procedure at Lorain Correctional.  (ECF No. 35, PageID #642.)  But Plaintiff goes on to explain the grievance procedure and accurately cite the statute from which it originated.  (*Id.*, PageID #647.)  Given that Plaintiff was able to understand the procedure well enough to explain it, the Court cannot conclude that it is opaque to the point that it is unavailable.  *See, e.g.*, *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1357 (11th Cir. 2020) (affirming the district court's decision that a plaintiff was demonstrably capable of understanding a grievance procedure because he responded to arguments about it).  Moreover, the record on summary judgment contains a manual, provided to each inmate, that presents the grievance procedure in simple, easily understood terms.  Further, the record establishes that Mr. Evans received the manual.

9

As for the third exception, where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the administrative remedy may not be "available." *Ross*, 136 S. Ct. at 1860. Even if the prison's grievance procedure is otherwise proper, it can nevertheless be unavailable if prison officials intentionally prevent or impede prisoners from accessing or using the procedure. *See, e.g.*, *Snyder*, 945 F.3d at 966 (stating that prison officials' failure to provide grievance forms and intercepting administrative findings thwarted prisoners' ability to use the grievance procedure); *Burfitt v. Lawless*, No. 1:19-cv-781, 2021 WL 1169071, at *3 (S.D. Ohio Mar. 29, 2021) (stating that tampering with or ransacking a prisoner's cell as an apparent consequence for filing a grievance thwarts a prisoner's ability to use the grievance procedure); *Brooks v. Dillow*, No. 1:15-cv-812, 2016 WL 6493419, at *6 (S.D. Ohio Nov. 2, 2016) (holding that a custom of refusing to allow appeals for excessive force complaints frustrates prisoners' ability to use the grievance procedure).

Plaintiff maintains that prison officials prevented him from accessing the grievance procedure. (ECF No. 35, PageID #646–47.) After he timely submitted his complaint (step one), Plaintiff claims that prison officials restricted him from using the JPay system for two weeks and that, even after that punishment ended, prison officials continued to prevent him from accessing the system to file an appeal (step two). (*Id.*, PageID #645–47.) Defendants agree that Plaintiff was formally restricted from using JPay for two weeks. (ECF No. 38, PageID #691.) Even if a prisoner at Lorain Correctional is restricted from JPay, he can still use the system in the

grievance process by notifying the guards.  (*Id.*, PageID #691–92.)  Plaintiff maintains, however, that he requested access to JPay, but officials did not respond or ignored the request.  (ECF No. 35, PageID #647; ECF No. 36, ¶¶ 10, 11, PageID #653.)

The record establishes that Mr. Evans was not permitted to use JPay until May 25, 2019.  He swears that he made repeated requests for permission to access JPay specifically relating to his grievance.  In contrast, Defendants claim that Plaintiff was free to use JPay after May 9, asked an official for permission to use the system, and was allowed to do so.  (ECF No. 38, PageID #691–92; ECF No. 38-1, ¶ 15, PageID #702.)  This conflicting evidence presents a genuine dispute of material fact on the pending motion for summary judgment.  Construing the record in favor of Mr. Evans, a reasonable finder of fact could credit the testimony of Mr. Evans and find that Plaintiff exercised reasonable diligence in seeking to exhaust his administrative remedies, but was thwarted or impeded in his ability to do so.

## II.    Defendants' Other Arguments

Defendants raise several other procedural arguments in favor of summary judgment.  First, they maintain that because Plaintiff's initial response did not comply with the Court's previous orders, Defendants are entitled to summary judgment.  (ECF No. 38, PageID #684–86.)  The Court permitted Plaintiff to refile a compliant brief, so this argument lacks merit.

Second, Defendants challenge the timeliness of that second response, which is postmarked the day of the filing deadline—January 25, 2021—and not filed on the docket for a couple more days, making it, as Defendants correctly point out, late. (ECF No. 35, PageID #650.)  This argument is *technically* correct.  "A paper not filed

11

electronically is filed by delivering it" to either the Clerk or "a judge who agrees to accept it"—not by placing it in the mail. Fed. R. Civ. P. 5(e)(A)–(B). And at the time he submitted his response, Plaintiff was no longer incarcerated; therefore, he does not benefit from the prison-mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 274–76 (1988) (discussing the rationale for the rule). The Sixth Circuit has limited the mailbox rule's application to *pro se* incarcerated individuals. *See Cretacci v. Call*, 988 F.3d 860, 866 (6th Cir. 2021) (declining to apply the prisoner mailbox rule for habeas petitions counsel drafts and submits), *Laird v. Norton Healthcare, Inc.*, 442 F. App'x 194, 199 n.4 (6th Cir. 2011) (discussing the contexts in which the mailbox rule does (*i.e.*, for pro se prisoners) and does not (*i.e.*, all others) apply).

Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers, *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). On the day of the deadline here, the Court had limited access to the courthouse due to Covid-19, which interfered with Plaintiff's ability to comply with the requirement that he deliver a copy of his opposition to the Clerk. Accordingly, under these peculiar circumstances, the Court does not consider Plaintiff's submission untimely. The Court reminds Plaintiff that he must comply with the Rules and will be held to the same standard as lawyers in this regard.

Third, Defendants focus on Plaintiff's statements regarding the lack of forms with which he could file a grievance or complaint. (ECF No. 38, PageID #690–91.)

Plaintiff did not argue that the grievance procedure was not available to him because of the lack of forms, he merely mentioned that he requested forms—in addition to access to JPay—and was denied both. (ECF No. 35, PageID #643–44.) Finally, Defendants contend that Plaintiff did not sufficiently identify the guards who allegedly caused his soap-related injuries in his initial complaint. (ECF No. 38, PageID #686–89.) But as Defendants point out in relation to some of Plaintiff's arguments, that issue is beyond the scope of this Order.

## CONCLUSION

For the reasons above, the Court **DENIES IN PART** Defendants' motion for summary judgment only on the limited ground that Defendants have not carried their burden to demonstrate Plaintiff failed to exhaust his administrative remedies.

Under Local Rule 72.2(a) and 28 U.S.C. § 636, the Court **REFERS** this matter to the assigned United States Magistrate Judge for all remaining pretrial matters, including issuing a report and recommendation on the balance of Defendants' motion for summary judgment. The Magistrate Judge is empowered to set a briefing schedule and rule on all pending non-dispositive motions as he sees fit.

**SO ORDERED.**

Dated: July 26, 2021

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

13