# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ADAM EVANS, | ) | Case No. 1:19-cv-02870 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| ANNETTE CHAMBERS-SMITH, *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

This lawsuit arises out of an incident during which Plaintiff Adam Evans, a former inmate of the Ohio Department of Rehabilitation and Correction, allegedly showered with a bar of State soap that contained staples resulting in various injuries. After two rounds of summary judgment briefing, only Plaintiff's Eighth Amendment claim against Defendant Corrections Officer Ricky Corbitt, who allegedly embedded staples in the bar of soap, remains. (*See* ECF No. 54.) On May 11, 2023, the Court held a bench trial at the request of the parties to resolve the disputed factual question whether Mr. Evans exhausted his administrative remedies as required under the Prison Litigation Reform Act.

The evidence at the bench trial presents a close question. At bottom, the record establishes an eleven-day period in which Mr. Evans had the opportunity to advance his informal complaint in the prison grievance system, and multiple opportunities and avenues for him to do so. Accordingly, federal law treats his failure to advance

his grievance as a failure to exhaust his claim. For these reasons, as more fully set forth below, the Court **DISMISSES** Plaintiff's complaint **WITH PREJUDICE** for failure to exhaust.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

In a summary judgment ruling dated July 26, 2021, the Court set out the governing standard under the Prison Litigation Reform Act that requires a prisoner to exhaust available administrative procedures before filing an action in federal court. (ECF No. 39, PageID #767.) As relevant here, Supreme Court precedent holds that a grievance procedure necessary for exhaustion is not available where prison officials prevent inmates from accessing that procedure. (*Id.*, PageID #769.)

In the partial summary judgment ruling dated July 26, 2021, the Court determined that a genuine dispute of material fact prevented judgment as a matter of law in favor of Defendant. (*Id.*, PageID #771.) Specifically, the Court noted the parties' competing views of the evidence in the summary judgment record at the time regarding whether Mr. Evans was able to use JPay, the prison's electronic system that hosts the inmate grievance procedure, among other things, to pursue and exhaust the grievance procedure, specifically Step Two of that procedure. (*Id.*)

Plaintiff proceeded *pro se* until October 3, 2022, when counsel entered an appearance following the Court's ruling on objections to the Magistrate Judge's Report and Recommendation on Defendant's motion for summary judgment. After counsel appeared, the Court directed the parties to begin preparing the case for trial. On January 31, 2023, the Court scheduled a jury trial for May 16, 2023. On April 27,

2023, in their joint proposed trial stipulations, the parties proposed for the first time that the Court hold a bench trial before submitting the case to a jury to resolve the disputed issues of fact on the issue of exhaustion. (ECF No. 64.) The Court scheduled a bench trial for May 11, 2023, the date previously scheduled for the final pretrial conference.

Based on the evidence presented at the bench trial, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF RELEVANT FACTS

The record, including the testimony at the bench trial held May 11, 2023, demonstrates the following facts relevant to the issue of exhaustion.

### A. Background and the Alleged Incident

In April 2019, Mr. Evans was incarcerated at the Lorain Correctional Institution. The parties agree that, on his admission to the prison, Mr. Evans received the facility's Inmate Handbook. Mr. Evans also testified that he received instructions on how to access the prison grievance system, which was housed on a computer system called JPay. During Mr. Evans's time at Lorain Correctional, he resided in unit 8B. Mr. Corbitt and Mr. Nathan Smith were a corrections officers at the Lorain Correctional Institution at that time and worked in unit 8B.

On April 22, 2019, Plaintiff alleges that he showered with a bar of State soap that contained staples, which injured him. He alleges that prison officials handed him the stapled soap, which was stored in a prison hygiene drawer.

3

### B. The Grievance Procedure and Plaintiff's Informal Complaint Resolution

Pursuant to Ohio Administrative Code Section 5120-9-31, the prison grievance process involves four steps, which are set forth in the Inmate Handbook (ECF No. 38-1). The Court summarized the grievance procedure in its opinion dated July 26, 2021, and that summary is consistent with the evidence presented at the bench trial. (ECF No. 39, PageID #762–63.) Only the first two steps of the grievance procedure are relevant here. Under the first step, an inmate must file an "Informal Complaint Resolution" through the JPay system. (ECF No. 38-1, PageID #723.) If the inmate believes the response to his Informal Complaint Resolution is insufficient or otherwise incorrect, he may file a notice of grievance, but must do so within 14 days of the disposition of his informal complaint. (*Id.*, PageID #723–24.)

On April 25, 2019, Plaintiff filed an Informal Complaint Resolution about the stapled soap through JPay. That same day, he was disciplined for an unrelated incident and placed on a JPay restriction for two weeks, through May 9, 2019. While on the JPay restriction, Mr. Evans expressed his concern that he would not be able to follow up on his informal complaint. He testified that he asked "everyone" for access to JPay, including Officer Larry Anderson, Officer Smith, Officer Corbitt, Sergeant Nottingham, and Captain Schwartz. He also expressed his concern to anyone else he saw in passing in the prison, including the prison priest, the librarian, and the case manager. Mr. Evans testified that he was prepared to pursue his grievance and had handwritten his concerns.

4

Mr. Evans sent several kites, which are internal prison communications, expressing his concern about the stapled soap and his inability pursue his grievance. On April 30, 2019 and May 1, 2019, Mr. Evans sent kites to prison officials expressing concern that he could not get on JPay because he was disciplined shortly before his scheduled recreation time, during which he would have had access to a JPay terminal, and that he did not have access to paper forms to file a grievance. On May 3, 2019, Mr. Evans sent another kite to prison officials asking for access to a phone to call his mother, Donna Park, to retain an attorney, noting his inability to pursue his grievance. On these dates, Plaintiff had already filed his Informal Complaint Resolution, and prison officials had not yet responded to it. Under prison policy, kites are not a step to exhaust a grievance.

On May 6, 2019, the institutional investigator opened Mr. Evans's Informal Complaint Resolution for investigation. The investigator closed the complaint six seconds later, triggering Plaintiff's deadline to file a notice of grievance 14 days later. (ECF No. 8-1, PageID #723–24.)

C. **Inmate Access to JPay**

Mr. Corbitt and Mr. Smith testified concerning inmate access to JPay and their recollection of Plaintiff's stapled-soap grievance. At the relevant times, Mr. Corbitt worked at Lorain Correctional five days per week. His days off were Sunday and Wednesday. Inmates housed in unit 8B participated in indoor recreation four times per week: on Sunday, Tuesday, Thursday, and Saturday. They also participated in outdoor recreation on Monday, Wednesday, and Friday. Mr. Evans disputed this

5

testimony in part, testifying that two of his indoor recreation days were limited to showering and watching television.

When supervising indoor recreation, Mr. Corbitt gave inmates turns to access JPay. He called inmates in order of their cell number, and every inmate had the opportunity to access JPay during the two-and-a-half-hour period of indoor recreation. If an inmate was unavailable when called, Mr. Corbitt would call the inmate's name again. In the normal course, each inmate received approximately ten minutes to use JPay during indoor recreation time. The schedule for indoor recreation access to JPay was posted and available to inmates. Mr. Corbitt testified that there were several JPay terminals available for use during outdoor recreation, and inmates lined up to use them.

Mr. Corbitt understood that if he refused an inmate access to JPay for the limited purpose of filing a grievance, he would be subject to discipline. This was true even if the inmate was on a JPay restriction. Inmates may not have been able to see new messages on JPay if they were on a restriction. However, they could access the system for the limited purpose of pursuing a grievance.

When prison officials were conducting an inmate count, there was no JPay access because every inmate had to remain in their cell until the count was complete. Further, during a lockdown, no inmate could leave his cell to access JPay. There is no evidence in the record that a lockdown occurred between April 25, 2019 and May 20, 2019.

6

Mr. Smith also testified. Mr. Smith worked at Lorain Correctional on Mr. Corbitt's days off. His testimony was largely consistent with Mr. Corbitt's. Also, Mr. Smith testified that the JPay system itself enforced the JPay restriction on inmates who were subject to discipline. This restriction would limit inmates to 20 minutes on JPay and only make certain functions available. However, inmates always had access to the grievance function on JPay, even when on restricted JPay access.

With respect to Mr. Evans in particular, Mr. Corbitt testified that he does not remember whether Mr. Evans asked him for access to JPay to file a notice of grievance or a second Informal Complaint Resolution. Similarly, Mr. Smith does not remember whether Mr. Evans asked him for access to JPay to file a notice of grievance or a second Informal Complaint Resolution. During the relevant time, approximately 120 inmates were housed in unit 8B.

### D.  Mr. Evans's JPay Restriction Expires

On May 9, 2019, Mr. Evans's term of discipline ended and his JPay restriction expired. As noted above, the institutional investigator disposed of his Informal Complaint Resolution three days earlier, on May 6, 2019. Eleven days remained for Mr. Evans to file his step 2 notice of grievance. There is no dispute that Mr. Evans did not do so.

Mr. Evans identified examples of times he was unable to access JPay to address his grievance. First, he testified that during one indoor recreation session he was standing near the JPay terminal waiting for Mr. Smith to call his number, but Mr. Smith skipped him. Second, he testified that during other indoor recreation

7

sessions there was not time for every inmate to access JPay, and he did not receive a turn. Third, he testified that during outdoor recreation, the JPay terminals were not operating.

The record establishes that, while on JPay restrictions, Mr. Evans sent kites concerning his grievance. But there is no evidence that Mr. Evans sent kites between May 9, 2019 and May 20, 2019, when his time to file a notice of grievance expired. (*See* Def. Exh. 9; Def. Exh. 22.)

On May 25, 2019, Mr. Evans accessed JPay to file a direct grievance against the warden regarding his inability to exhaust his administrative remedies. He filed similar grievances through JPay on May 30, 2019 and June 12, 2019.

## CONCLUSIONS OF LAW

The Court set forth the applicable legal standard in its ruling on Defendant's first motion for summary judgment. (ECF No. 39, PageID #767–69.) Under the Prison Litigation Reform Act, a prisoner "may not bring a federal action related to prison conditions 'until such administrative procedures as are available are exhausted.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting 42 U.S.C. § 1997(e)(a)). Complete exhaustion is a mandatory requirement, meaning failure to exhaust cannot be excused, even under special circumstances. *Ross v. Blake*, 578 U.S. 632, 638–39 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and *Jones v. Bock*, 549 U.S. 199, 211 (2007)).

Failure to exhaust is an affirmative defense, meaning "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*,

8

549 U.S. at 216. "Instead, failure to exhaust 'must be established by the defendants.'" *Surles*, 678 F.3d at 455 (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011)).

The Prison Litigation Reform Act contains a "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies that are not 'available.'" *Ross*, 578 U.S. at 635 (quoting 42 U.S.C. § 1997e(a)). Whether a grievance procedure is available is assessed based on the "ordinary meaning" of that word. *Ross*, 578 U.S. at 642 (quotations omitted) (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Put differently, a prisoner must "exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 642 (cleaned up).

The Supreme Court has recognized three circumstances in which a grievance procedure necessary for exhaustion is not "available." *Id.* at 643–44. Only one of these exceptions remains at issue in this case. (*See* ECF No. 39, PageID #769.) Where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the administrative remedy may not be "available." *Ross*, 578 U.S. at 644.

The parties do not dispute that Mr. Evans failed to exhaust his administrative remedies. He never filed a notice of grievance, which is step two of the prison grievance process, and the deadline to do so was May 20, 2019. Mr. Evans insists that he was thwarted in his efforts to exhaust his administrative remedies, making an exception to the exhaustion requirement apply. In the face of the testimony of

9

Mr. Evans—that he made every effort available to him to pursue his grievance, to the point that he asked just about everyone he could about his grievance, testimony which the Court credits—Defendant has the burden to prove a negative, that Mr. Evans was not thwarted.

Based on the findings of fact set forth above, the Court finds by a preponderance of the evidence that Plaintiff failed to exhaust his administrative remedies and was not thwarted from doing so. While he was on JPay restrictions, the Court assumes that Mr. Evans was unable to access the system, even for the limited purpose of accessing the prison grievance procedure. That restriction ended on May 9, 2019. In the eleven days that followed, Defendant presented evidence that there is simply enough time and many ways for Mr. Evans to file a grievance that the Court finds it implausible that prison officials and employees thwarted his ability to do so throughout that period.

During his testimony, Mr. Evans provided several examples of ways in which he was thwarted from accessing JPay. The Court does not doubt that there were times, perhaps even days, when Mr. Evans might have been thwarted, unintentionally, from accessing JPay. For example, Mr. Smith skipped him in line, intentionally or not, and on another occasion an encounter with Sgt. Nottingham prevented Mr. Evans for accessing JPay. Taking Mr. Evans' testimony as true, the question is whether during any recreation period or on any particular day Mr. Evans was thwarted. It is whether, from May 9, 2019, when his JPay restriction ended, to

May 20, 2019, when his time to file a notice of grievance ran, Mr. Evans had an opportunity to access JPay and file his notice of grievance.

Defendant has shown by a preponderance of the evidence that Plaintiff had the opportunity, at various points during the eleven days following his JPay restrictions ended to use the system to file his notice of grievance. Defendant presented evidence showing that, during the course of a normal week, inmates at Lorain Correctional had the opportunity every day during either indoor or outdoor recreation to access JPay. Even if two of those days were limited to showering and watching tv, and there were times on other days that he was not permitted a turn at the JPay kiosk, the record shows many available opportunities for using JPay to pursue a grievance.

## CONCLUSION

Nothing in this ruling should be taken to minimize or downplay the events, injuries, and resulting trauma that precipitated Plaintiff's lawsuit. But the law requires exhaustion, Plaintiff failed to exhaust, and Defendant satisfied his burden to show that no exception to the requirement for exhaustion applies here.

Defendant satisfied his burden by demonstrating that, during the normal course of prison operations, Plaintiff had at least one, if not several, opportunities to access the JPay terminal between May 9 and May 20, 2019. Mr. Evans testified that he was prepared and had written out everything he wanted to say. He only needed a reasonable opportunity to enter the contents of that note into the JPay system. The record shows by a preponderance of the evidence that Mr. Evans had such an opportunity at some point between May 9, 2019 and May 20, 2019.

For the foregoing reasons, the Court **DISMISSES** Plaintiff's complaint **WITH PREJUDICE** for failure to exhaust.

**SO ORDERED.**

Dated: May 13, 2023

J. Philip Calabrese
United States District Judge
Northern District of Ohio